UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| NICKOLAS SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-CV-00027-JAR |
| | ) |
| ANDREW SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Nickolas Smith's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons discussed below, this case will be remanded for further consideration consistent with this Memorandum and Order.

**I.     BACKGROUND**

On March 14, 2017, Plaintiff filed an application for SSI benefits based primarily on his clinical depression, anxiety, bipolar disorder, and obsessive-compulsive disorder. (Tr. 163).[1] The alleged onset date of Plaintiff's disabilities is April 11, 2017. (Tr. 158). On June 5, 2017, the Commissioner issued a Notice of Disapproved Claims. (Tr. 67-71). Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"), which took place on January 14,

---

[1] There were inconsistencies in the record as to the initial application date. (Doc. 22). The parties have since stipulated that March 14, 2017 is the correct date. (Doc. 23).

1

2019. (Tr. 32-56). Plaintiff was represented by counsel at the hearing, and the ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE").

After considering the testimony and record evidence, the ALJ issued a written decision denying Plaintiff's application on March 11, 2019. (Tr. 13-31). On December 11, 2019, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. (Tr. 1-7). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000). Plaintiff filed this appeal on February 7, 2020. (Doc. 1). The Commissioner filed an Answer on May 18, 2020. (Doc. 11). Thereafter, Plaintiff filed a Brief in Support of Complaint (Doc. 20) and the Commissioner filed a Brief in Support of the Answer. (Doc. 21).

## II.   FACTS

The Court adopts Plaintiff's Statement of Uncontroverted Material Facts (Doc. 20-1) to the extent they are admitted by the Commissioner. The Court further adopts the Commissioner's Response to Plaintiff's Statement of Uncontroverted Material Facts. (Doc. 21-1). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

## III.   LEGAL STANDARDS

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018); *see also Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The

Court defers heavily to the findings and conclusions of the Social Security Administration ("SSA"). *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). In other words, this Court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Ed. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *see also Stamper v. Colvin*, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016). The SSA has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must have a "severe impairment," defined as

3

"any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations ("Listings"). 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his or her impairments. SSR 96–8p. At step four, the ALJ must determine whether, given the RFC, the claimant can return to his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Perks v. Astrue*, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he or she will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to make an adjustment to other work in light of his or her RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Through step four, the burden remains with the claimant to prove he or she is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Harris v. Barnhart*, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); *see also Stamper*, 174 F. Supp. 3d at 1063.

4

## IV. DECISION OF THE ALJ

The ALJ determined that Plaintiff suffered from the severe impairments of major depressive disorder, generalized anxiety disorder, and bipolar disorder, but that no impairment or combination of impairments met or medically equaled a Listing. (Tr. 18-21). The ALJ acknowledged that Plaintiff was obese, but "there were no significant objective medical findings in the record to support more than minimal limitations on the [Plaintiff's] ability to perform work activities" due to his obesity. (Tr. 18).

After considering the entire record, the ALJ found that Plaintiff had the RFC to perform the full range of work at all exertional levels but with certain non-exertional limitations:

> [Plaintiff] can never climb ladders, ropes or scaffolds. The [Plaintiff] can have no more than occasional exposure to hazards, such as unprotected heights. The [Plaintiff] can perform work limited to simple, routine, repetitive tasks involving only simple, work-related decisions, and no work with an assembly line or conveyor belt. The [Plaintiff] can have only occasional interaction with co-workers, supervisors, or the general public. (Tr. 21).

Plaintiff had no past relevant work. (Tr. 26). Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (Tr. 26). Specifically, and in accordance with the Dictionary of Occupational Titles ("DOT"), the ALJ determined that Plaintiff would be able to perform the requirements of a Laundry Worker, Garment Sorter, or Packer. (Tr. 27). Thus, the ALJ found Plaintiff was not disabled at any time since April 11, 2017. (*Id.*).

## V. DISCUSSION

At the time of the hearing, Plaintiff was twenty-two years old, residing on his parents' property, and had a ninth-grade education with no past relevant work history. (Tr. 146-164). Plaintiff has struggled with mental health issues since he was twelve years old, including two previous suicide attempts, and his main impediment to maintaining employment has been

5

"[m]otivation and the lack of being able to have a schedule." (Tr. 36-38). While recognizing Plaintiff's severe impairments, the ALJ found that Plaintiff's "limitations have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. 26). Plaintiff argues that the ALJ improperly evaluated the treating physician's opinion and that the RFC was not supported by substantial evidence. Because the ALJ failed to provide good reasons for the weight given to the treating physician's opinion, remand is appropriate.

    A.  Opinion of the Treating Physician

Plaintiff argues that the opinion of Dr. Courtney Johnson, a treating physician who found that Plaintiff suffered from certain "marked" limitations, should have been given controlling weight. In determining a claimant's impairment and resulting RFC, an ALJ "must give a treating physician's medical opinion controlling weight if it is well supported by medically acceptable diagnostic testing and not inconsistent with the other substantial evidence in the record." *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009); *see* 20 C.F.R. § 404.1527(c)(2).[2] An ALJ may, however, "discount or disregard a treating physician's opinion 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (quoting *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014)). Whatever weight the treating physician's opinion is given, the "regulations provide that the ALJ must 'always give good reasons' for the particular weight given." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (citing 20 C.F.R. § 404.1527(c)(2)). SSA guidance provides that the decision "must contain specific reasons for the weight given to the treat source's medical opinion, supported

---

[2] The SSA has substantially revised the regulations regarding how much weight should be given to treating physician's opinions. *See* 20 C.F.R. § 404.1520c. The revised regulations, however, only apply to claims filed after March 27, 2017. Because Plaintiff's claim was protectively filed on March 14, 2017, the prior regulations apply. 20 C.F.R. § 404.1527(c)(2).

by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers . . . the reasons [for the decision]." SSR 96-2p.

      The ALJ gave partial weight to the opinion of Dr. Johnson, stating:

> Partial weight is given to the opinion of the claimant's treatment provider Courtney Johnson, M.D., who reported in a treating source statement that the claimant had mostly moderate limitations in areas pertaining to concentration, persistence, and pace, but marked limitations when it came to sustaining ordinary routine and regular attendance. He further assessed that the claimant's overall pace of production would be 21-30% below average, that the claimant would miss work, be late, or need to leave early at least three times each month or more. Dr. Johnson further assessed mostly moderate limitations and all other areas of functioning, and additionally opined that the claimant could perform in a setting where contact with co-workers, supervisors, and the general public was only casual and infrequent. While the opinion regarding the claimant's interaction is somewhat supported by the record, the evidence certainly supports mental health limitations, but not to a 'marked' degree in any area. (Tr. 25).

Plaintiff argues that this assessment is insufficient because "there is no explanation of what part of the opinion is afforded weight and how it is included in the RFC." (Doc. 20 at 3). This is not entirely accurate, as the ALJ clearly stated that the assessment of "marked" limitations was not supported by the record. The ALJ subsequently recognized that the Plaintiff's "treating sources offered opinions assessing a more restrictive RFC" but again concluded that such opinions "are given only partial weight." (Tr. 25-26). With the exception of the marked limitations in Dr. Johnson's opinion, which the ALJ declined to give weight, the RFC is consistent with the opinion.

      The Commissioner cites two readily apparent reasons why Dr. Johnson's opinion did not merit controlling weight. First, the opinion contained statements inconsistent with evidence in Dr. Johnson's own treatment records for Plaintiff. Specifically, Dr. Johnson's opinion states that Plaintiff "always appears disheveled and tired with decreased speech, mild psychomotor slowing . . . and poor concentration." (Tr. 733). Yet Dr. Johnson's own treatment notes consistently indicate that Plaintiff was appropriately dressed and groomed, had normal speech patterns, and good concentration and attention span. (Tr. 359, 368). These treatment notes are consistent with

7

Plaintiff's medical records across numerous other visits and clinicians.[3] "An ALJ may justifiably discount a treating physician's opinion when that opinion 'is inconsistent with the physician's clinical treatment notes.'" *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson*, 578 F.3d at 843); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ does not specifically mention these inconsistencies, however, and there is no indication that the inconsistencies speak directly to the portion of the opinion that the ALJ declined to give weight.

Second, it appears that Dr. Johnson only met Plaintiff twice (in October 2018 and November 2018) before providing the treatment opinion. When deciding how much weight to give a treating physician opinion, an ALJ "must also consider the length of the treatment relationship and the frequency of examinations." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007); *see also* 20 C.F.R. § 404.1527(c)(2)(i). While this is a legitimate reason to partially discount Dr. Johnson's opinion, the ALJ did not mention the limited treatment relationship in the decision. The Commissioner's post-hoc explanations, though reasonable, cannot supply the "good reasons" that the ALJ failed to identify. It is clear that the ALJ's decision to only give partial weight to Dr. Johnson's opinion may have been reasonable based on the other evidence in the record, inconsistencies with Dr. Johnson's own treatment notes, and the limited nature of the physician-patient relationship. But the ALJ must also "always give good reasons" for the particular weight given. 20 C.F.R. § 404.1527(c)(2).

---

[3] The medical records consistently describe Plaintiff as appearing well-groomed and having normal speech and psychomotor skills, contrary to Dr. Johnson's opinion. *See* Tr. 238, 239, 242, 249, 253, 270, 273, 275, 278, 281, 284, 287, 290, 303, 374, 421, 435, 438, 448, 458, 468-69, 480, 492, 504, 516, 531, 544, 557, 567, 579, 659, 665, 668, 671, 674, 677.

This Court is particularly influenced by the Eighth Circuit's recent decision in *Lucus v. Saul*. 960 F.3d 1066 (8th Cir. 2020).[4] The Eighth Circuit reversed the district court and remanded because the ALJ failed to give good reasons for giving a treating physician's opinion partial weight. Yet the ALJ in *Lucus* provided significantly better reasons than the ALJ here. In *Lucus*, the ALJ "identified two reasons for giving [the treating physician's] opinion partial weight," namely that the opinion was "internally inconsistent" and that another part of the opinion "conflicted with the record as a whole." *Id.* at 1069. The ALJ here simply stated that the marked limitations were not supported by the record. Indeed, this is quite similar to *Singh v. Apfel*, where the Eighth Circuit found that the ALJ failed to give good reasons when minimally stating that the treating physician opinion was "unreliable and unsupported by objective medical evidence." 222 F.3d 448, 452 (8th Cir. 2000).

"[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do." *Lucus*, 960 F.3d at 1069 (citing *Walker v. Comm'r Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)). Because the ALJ only provided a boilerplate explanation for the decision not to give controlling weight to Dr. Johnson's opinion, remand is appropriate.[5] On remand, the ALJ should specifically consider the factors identified in 20 C.F.R. § 404.1527(c)(2)-(6) when determining the weight afforded to Dr. Johnson's opinion.

---

[4] The specific facts of *Lucus* are notably similar, as the primary issue was whether the plaintiff would be able to maintain a work schedule and limit absences in light of his mental impairments, including depression and anxiety.

[5] The Commissioner has not argued that the failure to give good reasons constitutes harmless error. This argument would be rejected, however, because the Eighth Circuit has clearly held that "[f]ailure [to give good reasons] is reversible error." *Walker*, 911 F.3d at 553. As discussed below, moreover, the key issue on which the ALJ rejected the treating physician's opinion – Plaintiff's ability to work without substantial disruption and unexcused absence – is something the Eighth Circuit has consistently held is critical to a finding of disability. "The failure to comply with SSA regulations is more than a drafting issue, it is legal error." *Lucus*, 960 F.3d at 1070.

B.  <u>Substantial Evidence Supporting the RFC</u>

Plaintiff further contends that substantial evidence did not support the RFC, specifically arguing that the ALJ excessively relied on the opinion of a non-examining consulting physician and that Plaintiff would not be able to work without excessive absences. (Doc. 20 at 7). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). While the ALJ is responsible for determining a claimant's RFC, the record must include "some medical evidence" supporting the finding. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam).

When determining Plaintiff's RFC, the ALJ carefully synthesized Plaintiff's extensive medical records. (Tr. 22-24). Among other findings, the ALJ identified numerous records describing Plaintiff as having a "mostly normal mental status examination." (Tr. 23). Throughout the records cited by the ALJ, Plaintiff made good eye contact, appeared well-groomed, was fully alert and oriented, and had cooperative attitude and normal speech. (Tr. 23-24). The ALJ also cited evidence of Plaintiff's personal activities, including that he "sometimes shoot[s] basketball, and tries to 'work problems' in order to keep his mind occupied." (Tr. 24).

Finally, the ALJ considered the opinion evidence, including that of Raphael Smith, Psy.D., the state agency reviewing doctor. Dr. Smith found that Plaintiff's mental health impairments were severe and caused various mild limitations, an opinion the ALJ found was "largely consistent with the conclusions from the [Plaintiff's] psychological evaluation, along with the often normal mental status examinations in the record." (Tr. 24). Alternatively, little weight was given to the opinion of John O. Wood, Psy.D., a consulting physician from the Missouri Department of Social Services. Many of Dr. Wood's statements were conclusory regarding Plaintiff's disability, effectively performing a "task assigned solely to the discretion of the [Commissioner]." *Krogmeier v.*

10

*Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) (quoting *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996)). As discussed above, the ALJ gave partial weight to the opinion of Dr. Johnson, Plaintiff's treating physician. An ALJ is "charged with the responsibility of resolving conflicts among medical opinions." *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008) (citing *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)).

There is meaningful evidence in the record demonstrating the severity of Plaintiff's impairments, as acknowledged by the ALJ. Records referenced in the ALJ opinion show Plaintiff struggling with mania and anxiety attacks while occasionally feeling suicidal. (Tr. 23-24). Despite this evidence, the ALJ concluded that Plaintiff's "mostly normal mental status examinations demonstrate he is capable of a level of functioning within the [RFC]" and "his activities of daily living lend further support that he is capable of employment with the accommodations set forth in the [RFC]." (Tr. 24). "It is not the role of this court to reweigh the evidence presented to the ALJ." *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994). Instead, we ask only whether there is enough evidence that a reasonable mind would accept it as adequate to support the ALJ's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). In light of the substantial medical and other evidence in the record supporting the ALJ's determination, this Court cannot generally conclude that the RFC is unreasonable and requires reversal. There is one specific issue, however, where further consideration is appropriate.

Plaintiff argues that he will not be able to "complete a normal workday and workweek without interruptions" or "perform at a consistent pace without an unreasonable number and length of rest periods." The applicable regulations specifically encourage medical opinions regarding what a claimant can accomplish despite his or her impairments. *See* 20 C.F.R. § 404.1513(a)(2); *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995) ("The assumption that physicians cannot

11

opine as to the hours a claimant can work is wrong. Physicians regularly make such assessments."). Plaintiff's treating physician, Dr. Johnson, assessed that Plaintiff may miss work three times or more per month, would have marked inability to sustain ordinary attendance, and would have an overall pace of production 21-30% below average. (Tr. 730-31). As discussed above, the ALJ failed to give good reasons for rejecting this finding. At the hearing, moreover, Plaintiff repeatedly stated that he has "no motivation" and "[i]t feels like any time I wake up I will be better off just going to sleep." (Tr. 42). Due to this lack of motivation, "the simplest tasks are extremely difficult." (Tr. 43). Besides the opinion of Dr. Smith, this Court cannot find any evidence in the record supporting a determination that Plaintiff will be capable of working eight hours per day, five days per week with limited unexcused absences.

"Employment can be precluded by impairment-related frequent absences." *Lane v. Berryhill*, Case No. 4:17-CV-02393-ERW, 2019 WL 952069, at *5 (E.D. Mo. Feb. 27, 2019) (citing *Maresh v. Barnhart*, 438 F.3d 897, 901 (8th Cir. 2006)); *see also Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work."). The Program Operations Manual ("POMS") describes an ability to "maintain regular attendance and be punctual within customary tolerances" as critical for performing unskilled work, though "[m]aintaining a schedule is not critical." POMS DI 25020.010(B)(3)(e).

At the hearing, the VE notably testified that, for unskilled work, the tolerance is 9% of the day (besides regular breaks) for time off-task and three to five days of unexcused absence per year. (Tr. 54).[6] Accordingly, it appears that Plaintiff is only able to engage in substantial gainful activity pursuant to his RFC if he can abide by the tolerances established by the VE. Given the VE's

---

[6] As the ALJ noted during the hearing, the DOT does not speak to time off-task and unexcused absences. The VE stated that his testimony on this subject was based on his "40 years of experience and education." (Tr. 54).

testimony and the ALJ's failure to justify giving partial weight to Dr. Johnson's opinion on this issue, this Court finds that on remand the ALJ must specifically address whether Plaintiff can comply with the applicable tolerances for time off-task and unexcused absences for unskilled work.

## VI. CONCLUSION

An ALJ must "always give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). While the Commissioner has attempted to provide such good reasons for the partial weight given to Dr. Johnson's opinion, Eighth Circuit precedent clearly establishes that the blanket statement provided by the ALJ is not sufficient. Dr. Johnson expressed the opinion that Plaintiff will require three or more absences per month due to his impairment. Remand is particularly appropriate here given the VE's testimony that such a quantity of absences would not be tolerated for unskilled work.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order. A separate Judgment will accompany this Memorandum and Order.

Dated this 4th day of January, 2021.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE